JOSEPH WANG, APPELLANT, V. BOARD OF EDUCATION OF
THE CHASE COUNTY HIGH SCHOOL DISTRICT, IN THE
COUNTY OF CHASE, IN THE STATE OF NEBRASKA, A
POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA,
APPELLEE.

260 N. W. 2d 475

Filed December 14, 1977.  No. 41163.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Frank E. Piccolo of Murphy, Pederson & Piccolo and LeRoy Anderson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

The plaintiff, Joseph Wang, a certificated teacher, was employed for the 1975-76 contract year by the defendant board of education.  On March 22, 1976, the defendant voted to terminate Wang's teaching employment at the close of the 1975-76 contract year. Wang timely filed a petition-in-error with the District Court seeking an order reversing the school board's determination to dismiss him on grounds that its action:  (1) Exceeded the statutory author-

ity of the board of education; (2) was made upon unlawful procedures; (3) was not supported by competent, material, and substantial evidence contained in the record; and (4) was arbitrary and capricious. The defendant filed a motion to dismiss Wang's petition alleging that Wang was a probationary teacher whose contract could be terminated without a showing of just cause. On November 9, 1976, the District Court sustained the defendant's motion. The plaintiff filed a motion for a new trial which was overruled and appeals from that ruling. We affirm the judgment of the District Court.

The sole question on appeal is a determination of the applicability of section 79-1254, R. R. S. 1943, to the plaintiff. The plaintiff was first employed by the defendant on May 12, 1974, for the 1974-75 school year. On May 6, 1975, he entered into his second teaching contract with the defendant for the 1975-76 school year. The defendant's position is that the plaintiff, not having been employed for 2 years by the school district, was on probation at the time of his dismissal and that he could, in full accordance with section 79-1254, R. R. S. 1943, be dismissed without just cause. The plaintiff's position is that having been employed by the defendant prior to February 26, 1975, the effective date of the amended version of section 79-1254, R. R. S. 1943, he could not be dismissed by the defendant without a showing of just cause, despite the fact that he had been employed less than 2 years by the defendant.

Prior to February 26, 1975, section 79-1254, R. R. S. 1943, as then written, did not require a showing of just cause before the employment of a teacher could be terminated. Schultz v. School Dist. of Dorchester, 192 Neb. 492, 222 N. W. 2d 578 (1974). In response to our decision in Schultz v. School Dist. of Dorchester, *supra*, the 1975 Nebraska Legislature amended section 79-1254, R. R. S. 1943, so as to read in its present form. L. B. 82, the amending legisla-

tion, made three changes in the statute. It (1) required and defined just cause for dismissal; (2) separated the statutory provisions applicable to teachers and superintendents; and (3) created a 2-year probationary period during which newly hired teachers could be dismissed without a showing of just cause.

Section 79-1254, R. R. S. 1943, as amended, and as is important to this appeal, provides: "Except for the first two years of employment under any contract entered into after February 26, 1975, any contract of employment between an administrator or a teacher who holds a certificate which is valid for a term of more than one year in a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract for just cause at the close of the contract period. The first two years of the contract shall be a probationary period during which it may be terminated without just cause."

In two recent cases the United States District Court for the District of Nebraska ruled that a teacher employed for more than 2 years prior to the effective date of the amended version of section 79-1254, R. R. S. 1943, was entitled to its protections, and could be dismissed only upon a showing of just cause. See, Walter v. Roubal, CV 75-L-109 (Neb., March 12, 1975); Klein v. Boehmer, CV 75-L-70 (Neb., March 12, 1975). The question for us to decide is whether the protections of the amended version of section 79-1254, R. R. S. 1943, requiring a finding of "just cause" before dismissal, were meant by the Legislature to be applicable to one in the plaintiff's position, who had been hired prior to, but less than 2 years before, the effective date of the amended version.

It is unclear from a reading of the statute itself whether the probationary period provided therein

was meant to apply to a person, such as Wang, who had been hired prior to, but less than 2 years before, the effective date of the amended version of section 79-1254, R. R. S. 1943, or whether the probationary period was meant to apply only to those persons employed after February 26, 1975, thus giving all teachers employed as of that date the protection of the act.

Where the language used in a statute is ambiguous, recourse should be had to the legislative purposes. United States v. Brown, 334 F. Supp. 536 (Neb., 1971). Where, because a statute is ambiguous, it is necessary to construe it, the principal objective is to determine legislative intent. Equal Opportunity Commission v. Weyerhaeuser Co., 198 Neb. 104, 251 N. W. 2d 730 (1977). Legislative intent is the cardinal rule in the construction of statutes. Brown v. Sullivan, 195 Neb. 729, 240 N. W. 2d 51 (1976). A fundamental principal of statutory construction is to ascertain the legislative intent and to give it effect. United States of America v. Edmunds, 186 Neb. 271, 182 N. W. 2d 829 (1971). The reasons for the enactment of a statute and the purposes and objects of an act may be guides in an attempt to give effect to the main intent of lawmakers. State v. Jennings, 195 Neb. 434, 238 N. W. 2d 477 (1976).

To ascertain the intent of the Legislature we examine the legislative history of the act in question. "The record of a floor explanation or debate is legislative history, and it may be an extrinsic, secondary source in statutory interpretation." Norden Laboratories, Inc. v. County Board of Equalization, 189 Neb. 437, 203 N. W. 2d 152 (1973). "In construing a legislative act, resort may be had to the history of its passage." School Dist. of Omaha v. State Board of Education, 187 Neb. 76, 187 N. W. 2d 592 (1971). See, also, Pettigrew v. Home Ins. Co., 191 Neb. 312, 214 N. W. 2d 920 (1974).

L. B. 82 was introduced into the 1975 session of the

Nebraska Legislature by Senator Simpson. As first introduced, the bill contained no probationary period. The bill was reported out of the Education Committee with an amendment which added reduction in force as a justifiable reason for terminating employment.

The bill was first debated at length on the floor of the Legislature on January 31, 1975. At that time the concept of a probationary period was first discussed. Senators Dworak and Mills submitted an amendment which added a 2-year probationary period to the statute. During the debate on that amendment, the following exchange took place regarding the effect of the amendment.

Senator Lewis: "The amendment they now have offered says that this is a two year period. Does that mean that everyone who has already taught for two years is beyond that stage or everyone who is currently teaching throughout the state is subject to that provision of probation * * *."

Senator Mills: "Senator Lewis, from this time forward. I would not believe it would be retroactive."

The broad concept of providing for a probational hearing before the "just cause" protections of the act would become effective was indicated by the Legislature at that time.

The precise language was worked out later. On February 5, 1975, Senator Mills offered an amendment to the Enrollment and Review Committee's amendment to L. B. 82 which, when it was adopted, gave section 79-1254, R. R. S. 1943, its current phraseology. During the discussion of the Mills' amendment, the following statements were made:

Senator Mills: "Mr. President, and members of the body, this is strictly clarification in wording from Emory Burnett and it will read, 'except for the first two years of employment under any contract entered into after the effective date of this act.' "

Senator Simpson: "Well, Mr. President, and members of the Legislature, I would only say that this is my bill and this is a very minor clarifying amendment to show the intent of Senator Mills original amendment and it only clearly shows that they are talking on the probationary period of people who are hired after the effective date of this act and it *does not go back retroactive and pick people up the past two years and put them in jeopardy who would have time beyond that length* * * *." (Emphasis supplied.) Floor Debate, 1975 Legislature, pp. 458, 459 (remarks of Senator Mills and Senator Simpson).

We find the remarks of Senator Simpson, the introducer of L. B. 82, significant in determining the legislative intent on the issue presented by this appeal. It seems clear to us that Senator Simpson's understanding of the effect of the amendment to his bill was that those employed on the effective date of the act, who had served at least 2 years prior to the effective date of the act, would escape the probationary period language of the act and thus not be placed in jeopardy. The inference is clear that the protection offered by the act, requiring a finding of just cause prior to any dismissal, was not intended by the Legislature to be available to those who had not yet, as of the effective date of the act's passage, been employed for 2 years. The legislative history of the amended version of section 79-1254, R. R. S. 1943, as we interpret it, thus supports the defendant's position.

Prior to the adopting of L. B. 82, a teacher could be dismissed without a showing of just cause. The Legislature was concerned over this situation and enacted L. B. 82 to remedy the situation as it then existed by requiring a finding of just cause before a teacher could be dismissed. The very fact that a probationary period was discussed and incorporated into the act during its passage indicates that the Legislature also intended that a teacher had to

prove his worth before becoming entitled to the protection it was providing.

Under the plaintiff's interpretation of section 79-1254, R. R. S. 1943, which we reject, a teacher hired on February 25, 1975, could not be dismissed without a finding of just cause being first made, whereas a teacher hired on February 27, 1975, had to serve a 2-year probationary period during which he could at any time be summarily dismissed. The plaintiff cites no reasoning, rationale, or policy which might have led the Legislature to make such a distinction. If possible, a court will try to avoid a statutory construction which leads to absurd, unjust, or unconscionable results. State v. Nance, 197 Neb. 257, 248 N. W. 2d 339 (1976).

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent. This court has said many times that a plain, clear, and unambiguous statute is not subject to construction by the court, but must be accepted as it reads. In this case the statute is clear and unambiguous and needs no interpretation. What the majority has done here is to use legislative floor discussion to create an ambiguity where none existed and then, in the guise of construction, rewrite the statute.

The effect of the court's "interpretation" is to strike from the statute the words "under any contract entered into after February 26, 1975." There is nothing in section 79-1254, R. R. S. 1943, with which those words conflict so as to create an ambiguity and there is nothing in any other related statute which creates any conflict or ambiguity. On what basis does the court perform the surgery? It does it on the ground that the Legislature really did not intend that the stricken words be in the statute and it does this solely on the basis of what one legislator

said about the "purpose" of the 1975 amendment to section 79-1254, R. R. S. 1943, and, as I will later show, it does this on the basis of a misreading of the legislative discussion.

The majority at no point in its opinion tells us wherein the ambiguity lies. It does not, because it cannot. There is no ambiguity. The majority opinion simply announces that there is an ambiguity, then looks to the legislative floor discussion for some peg upon which to hang its pronouncement.

As the majority opinion points out, previous to the 1975 amendment the statute contained no provision relative to a probationary period. The entire floor discussion of which the opinion makes mention pertained to the question of whether a provision for a probationary period should be made retroactive. In order that it not be retroactive, that is, in order that the probationary period not apply to contracts previously entered into, it inserted the words: "Except for the first two years of employment under any contract entered into after February 26, 1975 . . . ." The phrase, "under any contract entered into after February 26, 1975," had the plain effect of exempting contracts entered into prior to February 26, 1975. That is, under the first sentence of the portion of the statute quoted in the majority opinion, such contracts could not be terminated except upon the notice required by statute and for just cause shown. It could have no other effect or purpose, for without those words the statute would plainly mean just what the majority now says it means, that is, the probationary period of 2 years applies to all contracts entered into before or after February 26, 1975.

The legislative discussion between the three Senators as quoted in the opinion is itself unambiguous and supports the literal language of the statute. Apparently the majority siezes upon the last seven words of Senator Simpson, to wit, "who would have time beyond that length," and attributes to them

some ambiguity. Let us examine that premise. Those words cannot refer to contracts of employment where 2 years of service have already been completed. They can only refer to the contracts entered into on or before February 26, 1975, but as to which 2 years employment would not be completed until after that date. The Senator's language could not possibly apply to cases where 2 years employment was already completed. The language of the statute itself forecloses that. In short, the floor conversation between the legislators does not even support the court's conclusion as to what the legislators intended. Quite the opposite.

The first sentence quoted in the majority opinion provides for automatic renewal of the yearly contract of all contracts except those entered into after February 26, 1975, unless terminated by notice and for just cause. The next sentence quoted provides that the first 2 years "of the contract" shall be a probationary period and may be terminated without just cause. The antecedent to which the words "of the contract" in the latter sentence refer are the contracts which the preceding sentence excepts, that is, those entered into after February 26, 1975. There is no other antecedent to which it can refer. The only contracts for which there needed to be an exception were those where the first 2 years of employment overlapped February 26, 1975. The Legislature made that exception. This court wipes it out. Incredible!

The action of the majority in this case is, to my mind, the most dangerous precedent in statutory construction ever rendered by this court. If the precedent is followed in the future, any isolated phrase uttered by one legislator can be used as a scalpel to excise a provision this court deems unwise, unjust, or simply undesirable, or to change what, in this court's opinion, ought to have been done some other way.

WHITE, C. THOMAS, J., joins in this dissent.