GRACE WHEATON, APPELLEE, V. AETNA LIFE INSURANCE COMPANY OF HARTFORD, APPELLANT.

FILED MARCH 26, 1935. No. 29227.

*Brown, Fitch & West,* for appellant.

*Wear, Garrotto & Boland* and *R. E. McCormack, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOSS, C. J.

Grace Wheaton, 55, had long been employed by Swift & Company at Omaha, and was insured for $1,000 each in two group insurance disability contracts made between Swift & Company Employés Benefit Association of Chicago, Illinois, and Aetna Life Insurance Company of Hartford, Connecticut. She probably became totally disabled as early as November 1, 1932, but made no proofs of loss until she retained her present attorneys on May 29, 1933, and on the same day these proofs were by them prepared and forwarded. They were received at the home office of the insurance company on June 1, 1933. June 16, 1933, she filed her petition, in her own name, to recover on the policies. Soon thereafter it was discovered that she was and had been for some time mentally incompetent, and had engaged several other and different attorneys to handle the collection of her insurance. To relieve her from contracts for fees and that her settlement with defendant might be effectually made, proceedings were instituted to that end, and she was, by the insanity board of

Douglas county, adjudged insane on July 17, 1933. , On August 3, 1933, the county court of Douglas county appointed Gerald F. Nye her guardian, and on August 7, 1933, he was substituted for his ward as plaintiff in the action she had begun and filed an amended petition on the same day.

The wide separation of the various parties in interest in Omaha, Chicago and Hartford made the investigation slow. The policy is not in evidence, but it is agreed that it provided no waiting time for payment after proofs of loss are furnished. When the guardian was substituted as plaintiff, defendant's attorneys were not yet authorized by defendant to settle, and so, on August 28, 1933, they filed a demurrer to the petition of the guardian, in order not to be in default. This was overruled and on October 9, 1933, defendant answered and paid $2,000 into court as for the amount due plaintiff, pleading that the policies provided that the benefit association should designate which of several optional payments would be acceptable, and that, pursuant to defendant's request to designate the manner of payment, the benefit association had designated a lump sum payment. In its answer it did not disclose when the designation of a lump sum as the manner of payment of the policies was received, but Mr. West, one of the attorneys for defendant, testified that his firm, on August 18, 1933, received a letter from the home office, dated August 16, 1933, instructing them to admit liability for $2,000. At that time the attorneys were sparring over the attorney fees to be allowed if the cause went to judgment, the attorneys for plaintiff wanting $200 in case of compromise and defendant willing to pay $100. They were unable to agree and the case went to trial. It was tried December 2, 1933, to the court, at the October term.

The court allowed plaintiff a judgment for $2,000 and allowed him $200 attorney fees. Appellant brought the cause here, assigning as error that, under the evidence, record and law, the court erred in allowing an attorney fee and that, in any event, the fee is excessive. Plaintiff

cross-appealed, assigning as error that the court refused "to allow the computed interest on the principal sum of the policies and cover the same in the judgment." In plaintiff's brief he claims "that there should be added to the judgment the sum of $46.66, which is interest for four months from June 1, 1933, the date of the proof of loss, to October 9, 1933, the date of the filing of the answer."

Interest on the forbearance of money was, at the time this claim arose, 7 per cent. Comp. St. 1929, sec. 45-102. It was changed to 6 per cent. by an act, without an emergency clause, approved May 10, 1933. Laws 1933, ch. 84. The legislature in that year adjourned May 9, 1933. The act did not "take effect until three calendar months after the adjournment of the session at which it passed." Const., art. III, sec. 27. Therefore, the rate here would be 7 per cent.

While, generally, no claim is made for interest in such a situation until the insurance company has had a reasonable time to make investigation, yet there having been no waiting time agreed upon in the policy, there was a forbearance on the part of plaintiff from the time the proofs were received at the home office. We do not find the proofs of loss in the evidence, but the letter of transmittal by Grace Wheaton and another letter written by her to the home office on June 16, 1933, asking the company to send the insurance money, were sufficient notices that the lump sum was selected, if that were necessary. As to the plea of defendant that the benefit association was charged with the duty of making a selection of the optional method of payment, the policy is not in evidence and we cannot determine from it what, if any, was its provision in that respect. There is in the evidence a letter from the home office dated July 18, 1933, to the attorneys for defendant, saying: "We are approving this claim for payment," and saying that on this policy Swift & Company, the employer, is to designate the mode of settlement, that they have written the employer and "as soon as we receive an answer from the employer, we will inform you how this claim will

be settled." That was about seven weeks after proofs of loss were received. We have seen, from the statement of the facts, how the matter dragged along after this.

We are of the opinion that, under the agreed form of the policy, providing no waiting time, and the circumstances, there was a forbearance of the money from the time the proofs of loss were furnished. While this would amount to somewhat over four months, yet that is all plaintiff asks on his cross-appeal. The trial court perhaps allowed the generous fee of $200 and omitted this interest, because the principal of the policies had been paid into court, hoping this would make an end of the controversy. Nevertheless, we think the judgment was too low to the extent of $46.66, which should have been allowed for interest. The district court is directed to modify the judgment to that extent. We are of the opinion that the $200 attorney fee allowed plaintiff in the court below was ample to cover fees in both courts and make no allowance here. As thus modified, the judgment will be affirmed.

AFFIRMED AS MODIFIED.