REQUESTED BY: Chris Beutler, Senator
Nebraska State Legislature
You have requested an opinion of the Attorney General concerning "whether Neb. Const. art. III, § 19 prohibits retirees who maintain account balances in the cash balance fund from receiving dividends in light of the inequity that such a prohibition creates." You indicate that you are considering a bill in the next session to clarify existing provisions of the State Employees Retirement Act. The issue posed by your question is whether distribution of a dividend to cash balance benefit accounts of participants not actively employed on the date of the dividend distribution would constitute a gratuity prohibited by Neb. Const. art. III, § 19. We believe that a dividend distribution to retired members who maintained a cash balance benefit account during the plan year of the dividend would be constitutionally permissible.
I. Cash Balance Benefit Plans
A new type of retirement plan termed "cash balance benefit" was established by the Nebraska Legislature for use in the State and County Employees Retirement Systems by passage of LB 687, Laws 2002.
Briefly summarized, the cash balance plans implemented by the Nebraska Public Employees Retirement Systems, NPERS, offers members an account balance based on contributions to which is credited an amount (interest credit) equal to the greater of five percent (5%) or the applicable federal mid-term rate plus one and one half (1½%). compounded annually. Neb. Rev. Stat. §§84-1309.02 (Supp. 2005) and 84-1301(18) (Cum. Supp. 2004). Under the cash balance plans, state employees could elect participation in the plans with an operative date of January 1, 2003. Members of the retirement system employed on and after January 1, 2003 are enrolled in the cash balance plan.
II. Dividend Policy
The Nebraska Public Employees Retirement Systems adopted a policy providing for dividend payments based on the authority of Neb. Rev. Stat. § 84-1319(4)(c) (Cum. Supp. 2004) which states:
 On the basis of all data in the possession of the retirement board, including such mortality and other tables as are recommended by the actuary engaged by the retirement board and adopted by the retirement board, the retirement board shall not provide any benefit improvements that would increase the actuarial contribution rate above ninety percent of the actual contribution rate.
The Retirement Board's Policy in particular part states:
 • Each year after the annual actuarial valuations results are received the Board will determine, based on the recommendation of the actuary, if a benefit improvement can be made, such as a dividend payment to individual Cash Balance member accounts, after allowing for the required ten percent funding reserve within the plan.
 • To be eligible for the dividend a member must be actively employed on the date of the distribution of the dividend.
PERB Policy No. 10 (Rvs'd Sept. 2005) at 2, 3.
In implementing the policy, the Retirement Board issued dividends for the plan years 2003 and 2004 to cash balance benefit accounts in the State and County Employees Retirement plans. As we understand, members who maintained cash balance accounts during the 2003 and 2004 plan years did not receive the dividend if they were retired on the dates the dividends were issued (paid to participant accounts). Accordingly, a member who maintained a cash balance account during the 2003 plan year did not participate in the dividend derived from plan earning during the year 2003 if the member was retired on the date the dividend was distributed to participant accounts.
III. Constitutional Prohibition
The Nebraska Constitution precludes the granting of additional compensation, including pension and retirement benefits, to public officers after their services were rendered. Retired City Employees Club v. City of Omaha Employees Ret. Sys.,199 Neb. 507, 260 N.W.2d 472 (1977). Neb. Const. art III, § 19 in relevant part states:
 The Legislature shall never grant any extra compensation to any public officer, agent or servant after the services have been rendered . . . except that retirement benefits of retired public officers and employees may be adjusted to reflect changes in the cost of living and wage levels that have occurred subsequent to the date of retirement, . . .
The issue whether a member's participation in the dividend benefit is prohibited is dependent on whether the member rendered services subsequent to the enactment of the law establishing the retirement benefit. The constitutional prohibition has been characterized by the Nebraska Supreme Court in the following manner:
 It could hardly be made clearer or more positive that retirement benefits are either earned compensation for services rendered after the grant of them and therefore valid or that they are a gratuity and not a part of compensation and therefore invalid.
Wilson v. Marsh, 162 Neb. 237, 253, 75 N.W.2d 723, 733 (1956).
The Court further noted that the benefit of the retirement system awarded to a member thereof who renders services under the act creating the system after its enactment is not a grant of extra compensation which the Constitution condemns. Id. at 252,75 N.W.2d at 732. The granting of the benefit improvement in the form of a dividend occurred upon passage of LB 687, Law 2002, the legislative act establishing the cash balance benefit plans. The operative date of the cash balance benefit provisions of LB 687 was January 1, 2003. See § 84-1309.02. Thus, participating members retired at the dividend distribution date, who rendered services after the enactment of LB 687 are not constitutionally prohibited from receiving the dividend benefit.
As you have pointed out, PERB's authority to grant a dividend is not expressly stated in the retirement acts and thus, no legislative guidance is in place for ascertaining members' entitlement to dividends during any plan year. The PERB Policy precludes accounts of members who are retired on the date a dividend is distributed from participating in the dividend. PERB Policy No. 10 at 3. We point out that the Nebraska Supreme Court has concluded that benefits proportionate to contributions are not required to establish the validity of active retirement plans. Rather, "[b]enefits proportionate to contributions are not required. This being true, the Legislature may fix the dividing line at any point as long as the recipients are employees and members of the class on the effective date of the Act." Gossman v. State Employees Retirement Systems, 177 Neb. 326, 332,129 N.W.2d 97, 102 (1964) (emphasis added).
CONCLUSION
The dividend benefit was made possible by passage of LB 687 establishing the cash balance plans. Accordingly, participating members rendering services after the enactment of LB 687 are not constitutionally prohibited from receiving dividend distributions because they were retired at the date of the distribution of the dividend benefit. Legislative clarification of members' rights to dividend distributions would resolve issues regarding this important benefit.
 Sincerely, JON BRUNING Attorney General
 Fredrick F. Neid Assistant Attorney General
 APPROVED: ____________________________ Attorney General